## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VIVIAN R. HOLLIDAY,                      )
                                         )
                     Plaintiff,          )
                                         )     **CIVIL ACTION**
v.                                       )
                                         )     **No. 15-9171-JWL**
CAROLYN W. COLVIN,                       )
**Acting Commissioner of Social Security,**  )
                                         )
                     Defendant.          )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) denying Disability Insurance benefits (DIB) and widow's

insurance benefits (DWB) under sections 202(e), 216(i), and 223 of the Social Security

Act. 42 U.S.C. §§ 402(e), 416(i), and 423 (hereinafter the Act). Finding the

Administrative Law Judge's (ALJ) decision is not supported by the record evidence and

is inadequately explained, the court ORDERS that the decision shall be REVERSED and

that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

REMANDING the case for further proceedings consistent with this decision.

## I.      Background

Plaintiff applied for DIB and DWB, alleging disability beginning August 23, 2011.

(R. 13, 234, 241). Plaintiff exhausted proceedings before the Commissioner, and now

seeks judicial review of the final decision denying benefits.  Plaintiff argues that the record evidence does not support the ALJ's evaluation of the opinion evidence presented by the Social Security Administration (SSA) employee who interviewed Plaintiff when Plaintiff applied for disabled widow's benefits, by each of the medical sources, and by the human resources supervisor at Plaintiff's former employer, and that the ALJ erred as a matter of law when he applied step four of the sequential evaluation process.

The Commissioner argues that the ALJ reasonably found Plaintiff less limited than she claimed and capable of performing a range of work limited by mental restrictions, and that the ALJ's decision is supported by substantial evidence and should be affirmed.  She argues this is so for three reasons.  The ALJ reasonably weighed the medical opinions, and is not required to base his RFC assessment on a medical opinion.  The ALJ's failure to specifically discuss the observation of the SSA employee, if error, is harmless.  And, the ALJ properly relied upon record evidence that Plaintiff was not as limited as she alleged, including the report of the human resources supervisor at Plaintiff's former employer, the medical opinions of medical consultants who examined Plaintiff or reviewed the record evidence for the agency, and the report of a cooperative disability investigation (CDI) conducted by the agency.  Finally, she argues that the ALJ properly determined at step four that Plaintiff is capable of performing her past relevant work.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the record evidence does not support the ALJ's explanation why he accorded no weight to the medical opinion of each of Plaintiff's treating medical sources and to the medical opinion of the medical expert.

## II.   Discussion

The agency's action is the action taken in its final decision.  In this case, the final decision of the Commissioner is the decision which the ALJ issued on November 22, 2013.  (R. 13-25).  The court's review  begins with consideration of that decision.

### A.   The ALJ's Decision

At step two of the sequential process, the ALJ determined that Plaintiff's only impairments which are severe within the meaning of the Act are mental impairments-- "bipolar mood disorder, type II, primarily depressed and rule out malingering."  (R. 16) (finding no. 5) (bolding omitted).  He determined that the evidence does not establish that Plaintiff's alleged headaches lasted twelve months so they cannot be considered severe within the meaning of the Act, and consequently Plaintiff has no severe physical impairments.  Id.  In making this determination, he accorded "significant weight" to the opinion of the state agency medical consultant--that Plaintiff does not have a severe physical impairment.  Id.

At step three the ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of a Listed impairment.  (R. 16).  In applying the Commissioner's Psychiatric Review Technique to evaluate Plaintiff's mental impairments, the ALJ determined that Plaintiff has only mild to moderate difficulties in activities of daily living, in social functioning, and in concentration, persistence, or pace, and has had no episodes of decompensation of extended duration.  (R. 17).  It was at this point in his decision that the ALJ noted that

> the evidence obtained by the COOPERATIVE DISABILITY
> INVESTIGATIONS UNIT (CDI) investigators directly contradicts most of
> the claimant's alleged mental limitations (Exhibits 8E, 26F [(R. 327-39,
> 550-61)]). During the investigation, the claimant was active for over three
> hours during the surveillance. She performed several functions with no
> apparent problems that she alleges she cannot perform due to her alleged
> disabling condition. At no time did she ever appear to be anxious, paranoid,
> psychotic, mentally incapacitated or uncomfortable with what she was
> doing (Exhibits 8E/10 [(R. 336)], 26F/11 [(R. 560)]).

(R. 17). The ALJ found at step three that Plaintiff's allegations of mental limitations are

"credible only insofar as they support mild to moderate limitations in" activities of daily

living and in maintaining concentration, persistence, or pace. Id. He also found that the

record evidence does not support the paragraph C criteria of Listing 12.04--specifically,

"a residual disease process that has resulted in such marginal adjustment that even a

minimal increase in mental demands or change in the environment would be predicted to

cause the individual to decompensate." (R. 18).

Before moving on to step four, the ALJ assessed Plaintiff with the RFC "to

perform a full range of work at all exertional levels but with the following nonexertional

limitations: she is able to follow simple instructions and familiar low-level detailed

instructions, and she should be limited to superficial or occasional interaction with the

public." (R. 18) (finding no. 7) (bolding omitted). In the discussion of his RFC

assessment, the ALJ summarized the legal standard he applied to evaluation of the

credibility of Plaintiff's allegations of disabling symptoms and identified the Social

Security regulations and rulings guiding his evaluation of Plaintiff's allegations of

symptoms and of the opinion evidence. Id. at 18-19.

6

The ALJ summarized Plaintiff's allegations of disabling mental symptoms and found that they "are not credible."  Id. at 19-20.  He explained that his credibility determination was based on the CDI report identified above, and "other evidence suggesting that the claimant has exaggerated symptoms and limitations," id. at 20, including the report of a psychological examination by Dr. Sheehan, and "claimant's responses during psychological/psychiatric testing [which] resulted in an invalid profile, indicating the claimant was not fully cooperating and appeared to be engaging in malingering."  Id. at 21.

The ALJ summarized Plaintiff's medical treatment records and found that the Global Assessment of Functioning (GAF) scores assigned therein "are of limited evidentiary value" because the "subjectively assigned scores reveal only snapshots of impaired and improved behavior."  Id.  He also stated, "It appears the psychological treatment providers of record apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and they seemed to uncritically accept as true most, if not all, of what the claimant reported," although "as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints."  Id.

The ALJ next explained his evaluation of the opinion evidence in the record.  (R. 22-24).  He summarized the testimony and opinions of the medical expert who testified at the hearing, Dr. England, and accorded "no weight" to those opinions.  (R. 23).  He noted the report of the human resources supervisor at Plaintiff's former employer that Plaintiff

"did things in a timely manner and did not need anyone to tell her what to do" and that she had no conflict with other workers or supervisors.  Id.  He found the supervisor's opinion contradicts Plaintiff's allegation of inability to work and demonstrates Plaintiff's mental capacity to do her past relevant work, to interact with other workers, and to leave her house, and he accorded "significant weight" to that opinion because "it is consistent with the objective evidence including the CDI report."  Id.

The ALJ accorded "no weight" to the opinions of Plaintiff's treating physicians, Dr. Rahman and Dr. Kirubakaran because they are opinions on issues reserved to the Commissioner, because he found them "inconsistent with the record as a whole including the CDI report," and because they "demonstrate[] a lack of understanding of social security disability programs and evidentiary requirements."  (R. 23).  And, he accorded "no weight" to the opinion of Plaintiff's most recent treating physician, Dr. Birdsell, because he "apparently relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported," and because the opinion is inconsistent with the CDI report and the opinions of both Dr. Sheehan and the human resources supervisor.  Id.

Finally, the ALJ accorded only "limited weight" to the state agency psychological consultants because he agreed with their opinion that Plaintiff is not disabled but disagreed with their opinion that she had no severe mental impairments.  (R. 24).  And, he discounted the third party function report provided by Plaintiff's daughter because the daughter's statements "appear to be no more than a repetition of the subjective complaints

already asserted by the claimant," and her "repetition of the claimant's subjective complaints . . . does not make them any more credible."  Id.

Based upon the RFC he assessed and the testimony of the vocational expert at the hearing, the ALJ determined at step four that Plaintiff can perform her past relevant work as that work is generally performed in the economy.  (R. 24-25).  Consequently, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications for benefits.  Id. at 25.

## B.   Analysis

It is impossible to read the decision in this case without coming away with the firm conviction that the denial of benefits was based, primarily, on the report of the Cooperative Disability Investigations Unit to the effect that Plaintiff's allegations of functional limitations and restrictions were not supported by, and were in fact significantly contradicted by, Plaintiff's observed activities and abilities.  As the ALJ noted in his decision, Plaintiff completed a function report when applying for disability benefits in which she reported significant limitations and restrictions.  (R. 19) (citing Ex. 5E, R. 291-305).  Plaintiff reported that she is permanently incapacitated, stays in bed most of the time, and needs help putting on clothes, bathing, combing, or cooking.  (R. 291-92).  She reported that she does not prepare meals, go shopping, or engage in social activities, and that if she leaves her house she will have an anxiety attack.  (R. 293-95).  When asked to circle any of the items that her condition affects, Plaintiff circled all of the items, including lifting, walking, stair climbing, understanding, squatting, sitting, seeing,

9

following instructions, bending, kneeling, memory, using hands, standing, talking, completing tasks, getting along with others, reaching, hearing, and concentration. (R. 296). The function report indicates that Plaintiff's daughter helped her complete the form because she "did not understand some questions," had problems with memory and concentration, and was permanently incapacitated. (R. 301).

The CDI report indicates that the disability determination service recognized that Plaintiff's allegations do not appear credible and are inconsistent with the administrative record, and asked for an investigation to address these inconsistencies. (R. 331). The CDI unit was to investigate whether Plaintiff routinely left her home, whether she drives, if she can shop, interact socially, or count change, does she exhibit unusual or bizarre behaviors or appear to be responding to voices when no one is speaking to her, and does she appear to have problems with anxiety, panic attacks, or depression. Id. The CDI unit conducted an investigation including surveillance of Plaintiff between 10:19am and 1:35pm on May 8, 2012, and summarized its findings as quoted in the decision at issue:

> HOLLIDAY was active for over three hours during this surveillance. She performed several functions with no apparent problems that she alleges she cannot perform due to her alleged disabling condition. These functions arc walking, standing, reaching, lifting, sitting, talking, hearing, climbing stairs, seeing, completing tasks, concentrating, understanding, using her hands and getting along with others. Additionally, she used the restroom by herself, read a directory board to locate her doctor's office, operated and talked on a cell phone, functioned normally around other people in a large crowded store for 67 minutes, stood on her feet and walked around while she shopped independently for 67 minutes. She performed all of these functions with no apparent problems or limitations. At no time did she ever appear to be in any type of pain or discomfort nor did she ever appear to be anxious, paranoid, psychotic, mentally incapacitated or uncomfortable with

10

what she was doing.  Furthermore, she alleges that she does not drive yet
she just renewed her driver's license last month and she has two vehicles
registered to her.

(R. 338, 560) (quoted in the decision at R. 20).

The ALJ also relied on Dr. Sheehan's examination report in concluding that
Plaintiff's allegations are not credible.  (R. 20-21).  As the ALJ noted, Dr. Sheehan stated
that Plaintiff's poor performance on her mental status exam was not credible and
appeared feigned to suggest mental impairment.  (R. 20, 435).  She noted that there was
no clinical basis to suggest perceptual disturbance such as hallucinations.  Id. at 20, 437.
The ALJ quoted the conclusion of Dr. Sheehan's report, which suggested that Plaintiff
presented a smiling, well-groomed appearance for her driver's license photo one month
earlier but feigned a flat affect, agitated leg movements, and lethargy at her mental
evaluation.  Id. at 20, 438.  Dr. Sheehan opined that Plaintiff's "condition is uncertain,
and malingering should be considered as a diagnosis."  (R. 438) (quoted in the decision at
R. 21).  She stated her opinion:  "Frankly, many of [Plaintiff's] responses today were not
believable due to their extreme nature."  Id.  The ALJ's finding that Plaintiff's "responses
during psychological/psychiatric testing resulted in an invalid profile, indicating
[Plaintiff] was not fully cooperating and appeared to be engaged in malingering," was not
attributed to any record evidence.  (R. 21).  Nevertheless, the court's review of the record
reveals no other examination or testing suggesting a lack of cooperation or malingering,
so the court concludes that finding is also based on Dr. Sheehan's examination report.

The court finds that the evidence cited above more than adequately supports the ALJ's finding that "the claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are not credible" (R. 20) (underline added),[1] and Plaintiff made no contrary argument regarding the ALJ's credibility finding in either of her briefs.  Therefore, the ALJ is justified in rejecting every allegation made by Plaintiff.

However, a claimant might be incredible but nonetheless unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 416(i)(1) (defining disability), and be found disabled within the meaning of the Act.  Credibility, while no doubt bearing greatly on an agency decision, is simply not an indispensable requirement for disability under the Act.  Consequently, after determining that Plaintiff is not credible, the question remaining before the ALJ, and now before the court, is whether the record evidence--without considering Plaintiff's allegations--demonstrates that Plaintiff is disabled within the meaning of the Act.  The ALJ determined it does not.

The court finds that the ALJ erred in evaluating the opinion evidence when making that determination and remand is necessary for a proper evaluation of the opinion evidence.  Plaintiff made additional allegations of error which the court need not consider

---

[1]The court notes that it has rarely--perhaps never--seen a credibility finding in a Social Security case stated so succinctly or bluntly.

because it has already determined remand is required.  Plaintiff may present those arguments, if desired, to the Commissioner on remand.

The court first addresses the ALJ's evaluation of the medical opinions.  Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. §§ 404.1527(c), 416.927(c) (effective March 26, 2012); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2015).  A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If a treating source opinion is not given controlling weight, the inquiry does not

end.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  Such an opinion is

"still entitled to deference and must be weighed using all of the factors provided in 20

C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment

relationship and frequency of examination; (2) the nature and extent of the treatment

relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant

evidence; (4) consistency between the opinion and the record as a whole; (5) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the

opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v.

Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health &

Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the

weight he gives a medical opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the

opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.

(citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816

F.2d 508, 513 (10th Cir. 1987)).

Here, the ALJ recognized that Plaintiff's treating sources--Dr. Rahman, Dr.

Kirubakaran, and Dr. Birdsell--opined, respectively, that Plaintiff is permanently disabled

due to severe depression with psychotic features, is incapacitated and unable to work due

14

to her mental condition, and has marked and extreme limitations such that her impairment is of listing level severity.  (R. 23).  He accorded "no weight" to these medical opinions. (R. 23).  He did so despite the fact that a treating source opinion may in certain situations be worthy of controlling weight, is generally entitled to "particular weight," and is entitled to deference even when it is not accorded controlling weight.  He accorded "no weight" because opinions on "disability" are issues reserved to the Commissioner, because these opinions are not supported by objective evidence, because the opinions are inconsistent with the CDI unit report and with Dr. Sheehan's examination report, because the opinions demonstrate a lack of understanding of the Social Security disability programs, and because the opinions "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and they seemed to uncritically accept as true most, if not all, of what the claimant reported."  (R. 23); see also (R. 21) ("the psychological treatment providers of record apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and they seemed to uncritically accept as true most, if not all, of what the claimant reported.").

The ALJ sought the services of a medical expert, Dr. England, a Licensed Clinical Psychologist, at the disability hearing.  (R. 214-19).  In the decision, he recognized Dr. England's opinion that it is not likely Plaintiff has a malingering condition, that Plaintiff has marked difficulties in maintaining concentration, persistence, or pace, and moderate to marked difficulties with activities of daily living and with maintaining social

functioning, that she could not function on a sustained basis, and that her impairments

equal Listing 12.04C2.  (R. 22).  He accorded "no weight" to Dr. England's opinions

because Dr. England never mentioned the CDI report which in his view suggests that Dr.

England did not review the report despite being given it for review, because Dr. England

discounted Dr. Sheehan's suggestion of malingering which was also "consistent with the

observations of the CDI investigators," because Dr. England did not have access to the

initial and reconsideration disability determination explanations which contained the state

agency psychological consultants' opinions that Plaintiff had no severe mental

impairments and which gave substantial weight to Dr. Sheehan's opinion regarding

malingering, and because Dr. England may not have been aware that Plaintiff "was able

to leave her home and work after the alleged onset of disability."  (R. 22-23).

Despite using the state agency psychological consultants' opinions as one basis to

discount Dr. England's opinion, the ALJ accorded their opinions only "limited weight" to

the extent they determined Plaintiff was not disabled but rejected their opinion that

Plaintiff did not have a severe mental impairment.  (R. 24).

Finally, the only medical opinion to which the ALJ accorded any significant

weight was the opinion of the non-treating psychologist, Dr. Sheehan--who examined

Plaintiff on only one occasion, and for only approximately one-half of an hour.  (R. 336-

37, 434-39).  The record reveals that Dr. Sheehan examined Plaintiff on May 8, 2012, and

it was that date on which the CDI unit performed surveillance on Plaintiff.  The CDI unit

report indicates that Plaintiff was scheduled for an appointment with Dr. Sheehan[2] at

11:00am that morning and that she walked out of Dr. Sheehan's office at 11:29am.  (R.

336-37).  Although Plaintiff is correct when she argues that the ALJ did not specify the

weight accorded to Dr. Sheehan's opinion, it is clear from the decision that the opinion

was accorded significant weight.  The opinion was found by the ALJ to outweigh the

opinions of three treating sources and of a medical expert who formed his opinion after he

had admittedly been given all of the disability related development documents (E

Exhibits) and the medical records (F Exhibits) to review.  (R. 22).

The ALJ erred as a matter of law in discounting the treating source medical

opinions because he erroneously found that the doctors relied quite heavily on the

subjective report of symptoms and limitations provided by Plaintiff, and seemed to

uncritically accept as true most, if not all, of what she reported.  When an ALJ determines

that a physician's opinion is based on a claimant's subjective reports and does not provide

a legal or evidentiary basis from the record for that finding, that finding is merely the

ALJ's speculation or lay opinion which is within the prohibition of McGoffin v. Barnhart,

288 F.3d 1248, 1252 (10th Cir.2002).  Langley v. Barnhart, 373 F.3d 1116, 1121 (10th

Cir. 2004); see also Victory v. Barnhart, 121 F. App'x. 819, 823-24  (10th Cir. 2005)

(ALJ's finding--that a medical opinion is based on subjective complaints--which is not

_____

[2]Although the name of the psychologist with whom Plaintiff's appointment was
scheduled is apparently redacted from the CDI unit report (R. 336), the report also
indicates that Plaintiff's mother-in-law "waited in the hallway outside of [Dr.] Sheehan's
office."  (R. 337).

supported by evidence in the doctor's records or reports is merely speculation).  Here, the

ALJ found that <u>all</u> of the treating sources relied heavily on Plaintiff's reports and

uncritically accepted as true those reports.  Yet, he cites to nothing in the reports

themselves or in the doctors' records from which that finding might be derived.  Rather,

he relied upon Dr. Sheehan's report of feigned symptoms and suspected malingering, and

the CDI unit report of apparent ability to perform activities Plaintiff said she could not

perform to determine that the treating sources' opinions "apparently" relied on Plaintiff's

subjective complaints.  That is an insufficient basis as a matter of law to justify rejecting

the treating source opinions.

> The ALJ reasoned (without citation to medical or legal authority) that
>
> [d]iagnosing mental illness is not like diagnosing other chronic disease[s]
> such as heart disease, which can be identified by blood tests and
> electrocardiograms.  Instead, diagnosing and classifying mental disorders is
> more subjective and relies heavily upon the information provided by a
> patient.  In this case, the claimant's reports are highly suspect in light of the
> CDI investigation and evidence of malingering at the consultative
> examination.

(R. 21).  While it is true that diagnosis and treatment of mental disorders includes mental

status examinations and interviews with patients, mental health care providers have

training and expertise in properly interpreting the reports and the presentation of those

patients, and an ALJ, this court, or other lay observers do not have that expertise.

Therefore, as the courts have determined if an ALJ is to find that the mental health

sources have relied excessively on the claimant's subjective reports, his finding must be

18

based on evidence taken from those provider's reports or other records.  The ALJ has not done so here.

The potential for error is heightened here because the ALJ relied instead on the report of a lay investigation based on approximately three hours of surveillance along with the report of one psychologist based on a single examination of approximately thirty minutes to overcome the largely consistent reports of three treating psychiatrists and of a psychologist who had formed his opinion after reviewing all of the medical records and all of the background materials relating to Plaintiff's applications, her reports regarding functioning, disability and work, third-party reports, the agency's disability reports, and the CDI report.  This is not adequate evidence demonstrating that the treating physicians relied excessively on the subjective reports of the Plaintiff.

Moreover, Dr. Sheehan's report suggests that she would have accorded significant weight to the treating psychiatrists' treatment records and opinions if she had been provided them.  In the conclusion of her report, Dr. Sheehan stated that "[b]ecause of the extreme nature of her presentation and her poor performance during mental status questioning, more information is required before a definitive conclusion can be reached." (R. 438).  She "recommended that records from her primary care physician be reviewed to determine her history of depression.  Her psychological records should be obtained and reviewed." Id. (underline in original).  All of these records admittedly not provided to Dr. Sheehan were available to and reviewed by Dr. England, as was Dr. Sheehan's report.

The reasons given to discount Dr. England's opinion are likewise suspect.  The ALJ reasoned that Dr. England did not review the CDI report because he did not mention the CDI report.  As the ALJ noted, Dr. England testified that he had received "E Exhibits 1 through 17 and F Exhibits 1 through 25" (R. 47), and the CDI report was at Exhibit 8E. (R. 22).  And, as both the ALJ and Dr. England are aware, the purpose for which Dr. England was provided those exhibits was so that Dr. England could testify regarding his opinion of Plaintiff's mental condition based on his review of those documents. Therefore, if Dr. England did not review the CDI report, he was remiss in his duty as the ALJ suggested in the decision.  (R. 22) ("it appears his preparation for the hearing and his testimony at the hearing were seriously deficient").  But, it is the ALJ's duty to develop the record as to all questions relevant to the issue of disability, and if he questioned whether Dr. England was fully prepared to testify, he should have questioned Dr. England regarding that issue at the hearing.  He did not do so.  The ALJ discounted Dr. England's opinion that Plaintiff was not malingering because it was inconsistent with Dr. Sheehan's opinion, but he did not ask Dr. England to explain why he disagreed with Dr. Sheehan.

The ALJ also discounted Dr. England's opinion because it was not informed by the opinions of the state agency consultants who had performed the initial and reconsideration evaluations (that Plaintiff had no severe mental impairments, and that she was malingering) because those opinions were not contained in the medical records which had been provided for Dr. England's review.  There are several problems with this rationale.  First, the ALJ rejected these opinions to the extent they determined that

20

Plaintiff's mental impairments are not severe within the meaning of the Act, and only gave them weight "to the extent that the [ALJ] agrees with the psychological consultants that the claimant is not disabled." (R. 24). Such summary dismissal of these opinions by the ALJ hardly argues in favor of using the same opinions as a basis to reject Dr. England's review of a record which was much more complete than the record before the state agency psychologists, and who was available for direct examination of the bases for his opinion. Moreover, it was the ALJ who determined that he needed the testimony of a medical expert, and asked Dr. England to review the record and testify. If the opinions of the state agency psychological consultants were necessary to a complete review, the ALJ should have provided those opinions for the review, or failing that should have informed Dr. England of those opinions at the hearing, and asked him if that information would have changed his opinion, and why. The court is aware that practitioners in litigation before the court are fearful of asking "one question too many' when examining or cross-examining a witness. However, proceedings before an ALJ at a disability hearing are inquisitional rather than adversarial, and it is the ALJ's responsibility to seek complete answers, especially when he sought the assistance of the medical advisor. He should seek all answers, even when it may be that the answers will be contrary to his preliminary decision. When he fails to do so, he should not hold that failure against the claimant. Finally, the ALJ's determination that Dr. England "may not have been aware that the claimant was able to leave her home and work after the alleged onset of disability" (R. 23), is merely another suggestion that Dr. England did not properly review all of the

evidence, and if true once again emphasizes the ALJ's failure to inquire regarding that issue.

The ALJ erred in weighing the medical opinions of record, and he has not adequately explained how it is that the admittedly incomplete and uncertain opinion of a nontreating source who had examined the claimant only once outweighed the substantially consistent opinions of three treating sources and of one nonexamining source who reviewed the record and appeared at the hearing to testify regarding his opinions and their bases.  While it is true that Dr. Sheehan's opinion of malingering is supported by the conclusions of the CDI report, the ALJ has not adequately explained how this evidence of lay opinion based on three hours of surveillance can overcome the medical opinions in the record.

The ALJ also erred in according significant weight to the opinion of Plaintiff's former employer's human resources supervisor.  The ALJ found that the human resources supervisor's statement "completed on March 13, 2012 . . . directly contradicts the claimant's allegations of inability to work since the alleged onset date," and "demonstrates the mental capacity to perform her past job, interact appropriately with other workers and leave her house."  (R. 23) (citing Exhibit 5F).  The only sense in which this statement might stand for the proposition that Plaintiff presently has the capacity to perform her past job, interact appropriately with other workers, and leave her house after her alleged onset date--August 23, 2011, is to assume that the supervisor's statement on March 13, 2012 that Plaintiff was employed "to present" meant that Plaintiff was

physically performing the duties of her employment, interacting appropriately, and leaving her house to work with that employer after her alleged onset date. That assumption is demonstrably erroneous on the face of the supervisor's report. Although she stated that Plaintiff was employed "to present," the supervisor frequently completed her report in the past tense. (R. 425-26) ("was comparable," "required," "did things," "didn't need," "completed the job"). This ambiguity is explained when one considers that the supervisor included an "attendance calendar for years 2010 and 2011 and 2012," and provided a key to decipher the codes on the calendar. (R. 426). The calendar reveals that Plaintiff was absent from August 23, 2011 through March 10, 2012, the last full work week before the supervisor's report was completed, because of either Family and Medical Leave Act absence or because of sickness with a doctor's statement. (R. 426-28). Therefore, although Plaintiff had apparently not quit or been dismissed from her employment at the time the supervisor provided the statement, Plaintiff had been off of work since the date of her alleged onset of disability. Therefore, the statement says nothing regarding Plaintiff's capabilities after her alleged onset date, and the ALJ erred in relying on it to find otherwise.

Because the ALJ erred in weighing the opinion evidence, remand is necessary for proper consideration. The court does not mean by this opinion to suggest that the Commissioner must find Plaintiff disabled. The evidence seems very clear that Plaintiff's allegations of symptoms are not credible. However, the weight of medical opinions is just as clearly to the effect that Plaintiff's mental impairments are disabling. The ALJ has

erred in weighing those opinions.  On remand, it will be necessary for Commissioner to properly weigh those opinions based upon evidence in the record, and if she finds that the medical sources relied excessively upon Plaintiff's subjective complaints, she must base that finding upon evidence in the treatment records and reports of those sources.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 20th day of July 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**